Okay, take all the time you need to set up. Let me just go ahead and call the last case for today. Number 20-14814, Westchester General Hospital v. Evanston Insurance Company. Mr. Kaplan. Good morning, your honors. Jim Kaplan on behalf of the appellant, Evanston Insurance Company. We come before you this morning to seek reversal of summary judgment improvidently entered by the district court and ask you to enter judgment in Evanston's favor. This is an insurance coverage case brought by the policy holder, Westchester General Hospital to establish coverage. The facts of this case are difficult and disturbing. The hospital admitted the underlying plaintiff, whose name is purposes of our proceeding, Mrs. Jane Doe, admitted her to that facility. She was Baker-acted on New Year's Eve. That evening, after she was medicated and asleep in her room, she was sexually assaulted by one of the hospital's employees who was on duty. Evanston issued a policy to Westchester General Hospital containing several parts. The only two that matter here are the professional liability part and the general liability part. The professional liability part significantly contains a sexual act exclusion, and the record shows that that exclusion would have been deleted from the policy for the payment of an additional premium that the hospital decided not to pay. Within just a couple of three weeks after the assault, Mr. and Mrs. Doe sued the hospital in state court. They also sued the employee. The charges against the employee are not relevant to today's proceedings. There was one and only one count brought against the hospital for negligence in its promulgation, implementation, and enforcement of policies and procedures designed to protect the safety of their patients. The hospital tended to claim to Evanston. Evanston defended under a reservation of rights. The hospital sued Evanston for declaration of coverage in state court, and Evanston removed. Both sides sought summary judgment. As I understand the arguments that are before us, we're dealing with a bodily injury exclusion in the GL policy as well as a professional services exclusion, right? Yes, Your Honor. Okay. So on the professional services exclusion side, what is your argument about why there was performance of services of a professional nature rendered or that should have been rendered? In the operative pleading in the state court tort action, the plaintiff made a number of specific allegations in paragraphs 18 and 19 of that complaint. I'll highlight the more pertinent ones. Mr. and Mrs. Doe contended the hospital owed a series of duties to them, that the hospital had a special relationship with them because she was a mental health patient, medicated, and under the care of the hospital. In that regard, the plaintiffs contend that the hospital's duties included a duty to adequately and reasonably control and supervise hospital staff, to properly train them, to adequately and reasonably staff the mental health ward, to adequately and reasonably have policies and procedures to protect, and I'm quoting, vulnerable patients who are suffering from mental illness, who are mentally and pharmacologically infirm, and who are medicated, and to have those same procedures and abide by the industry rules and its own policies in having and implementing appropriate safeguards to prevent having a zone of danger where patients like Ms. Doe are exposed to sexual assault. So for that professional services exclusion, you don't focus on the act allegedly committed by the employee, you focus on the duty allegedly breached by the hospital? Yes, Your Honor. And why is that different for the bodily injury provision? Because the bodily injury provision is written specifically to exclude claims on behalf of certain narrowly identified individuals. Who are receiving services of a professional nature. The language in the BI exclusion, receiving services of a professional nature, is an adjective clause that modifies the specific individuals identified, and we address that in our brief, particularly in our reply brief, and you'll see there that the phrase patient, person, or resident of a facility receiving services of a professional nature are the people to whom coverage or for whom coverage is excluded to the hospital. Because those narrow classes of individuals, if they're injured while a patient or while receiving professional, while a resident of a facility, if they're there for the purpose of receiving services of a professional nature, then coverage exists, if at all, under the PL part of the policy. Let me ask the question this way. Yes, Judge Marcus. I always thought under Florida law that there had to be some connection between the act committed and the performance of some professional service. If that is correct, as a statement of controlling Florida law, does the act of sexual assault in any way involve the performance of any act requiring a high level of professional or training or proficiency? Let's unpack that and deal with it right now. First, let's be clear. Sexual assault does not constitute a professional service, period, full stop. We're not here to claim otherwise. What we are here to claim, and to answer your point, is that under a professional liability policy, there does need to be a tying, some causation between the act and the professional service. We're not here today on a professional liability policy. I got summary judgment on that point. No one appealed it. Let's deal with the GL side of it and the professional services exclusion. A few moments ago, I identified the policies and procedures of issue that the plaintiff contends in the underlying case, the hospital breached. There is an unbroken line of cases in this district, in the middle district, and affirmed in an unpublished opinion by this court, that administrative services and policies that tie hiring, recruitment, retention, and training constitute intricate and indispensable parts of professional services. You'll find that cited now brief in the Maryland casualty case against Florida Atlantic Orthopedics. That case relied heavily on one of Judge Covington's opinions in the colony insurance case against Suncoast Diagnostics. Both of those cases featured prominently in Judge Moody's decisions in triggers. You look at those cases together and the numerous others in these two districts that have looked at it, and you look at the unpublished opinion of this court in Maryland casualty, and you find that where you have an exclusion such as this, courts have not hesitated to enforce it because it's not the location of the act. It's not the nature of the sexual assault, certainly not. What we're here today to address is that the policies that the underlying plaintiff raised in the state court action fit within the ambit of the professional services exclusion. Now, Mr. Kaplan, I and my clerk did a lot of research. We even went to insurance treatises like Couch and Appelman and the like. We could not find a single case with this exact policy language. Did we make a mistake in our research somewhere? Is there a case with this exact policy language? I mean, I know there's stuff close to it. If you're talking about professional services exclusion, I think there are many cases out there like the ones I just cited. No, no, the bodily injury exclusion. I agree with you completely. There's nothing exactly like this. No, Your Honor, there isn't. So look, there are no rookies in this room. I hesitate to use the phrase case of first impression lightly. I couldn't find a case. I understand now that you couldn't either. So let's look at the language itself, and let's look at what happened to that language in the hands of the magistrate. What he did, and there can't be any real dispute about it, is that he inserted the word while, which was an error, which was a material alteration of the party's bargain, and Florida law is crystal clear you can't do that. I understand why he did it. We all learn at an early age that hard facts make bad law. These are some brutally hard facts, but in fairness, this is some awfully bad law. I take that point, but if you have someone who is a patient, person, or resident of a hospital, how can that person be a person, a patient, or resident unless they're receiving services of a professional nature? And if that's true, why is the language receiving service of professional nature in the exclusion? because if you're a patient or a resident, you're there to receive services. So why include that language? So to look at, I'll answer your question. To look at the precise language, you have patient, person, or resident of a facility. Correct. So a resident of a facility could be an assisted living facility, could be a nursing home, could be a lot of things. A person could be someone brought in, and in such dire condition, as to not actually have been admitted, patient speaks for itself. So these three classes of people, if they suffer a bodily injury at the hospital, they are excluded under the GL part. Ordinarily, you would find coverage under the PL part, but not here, because of the exclusion and the failure to buy it back. So you're telling me that if you have a case of a patient who has the wrong limb amputated during surgery, that would be under the PL policy, but not the GL policy because of this exclusion? Yes. Because that's bodily injury to have a limb amputated incorrectly. Absolutely. Right, but that person would be a patient of a facility receiving services of professional nature. Right, the difference here is that the magistrate imported the word while to establish a temporal or causal connection that is not a part of the exclusion. Of course a patient who has the wrong limb amputated has a claim against the hospital, and of course that claim is going to be covered under the professional liability part. But that's not what we're dealing with here. I'll save my remaining time for rebuttal. All right, thank you very much. Mr. Hassebrock. Thank you, Your Honor. May it please the Court, and I'd like to add it's a pleasure to be here with you in person today. Allegations of sexual assault don't fit within any description of professional services. That's true as a matter of Florida case law, but it's also true based on the specific allegations in this case. And counsel recited facts, but I wanted to point out that we're not here to deal with facts, we're here to deal with allegations because this is a duty-to-defend case, a duty-to-defend issue. So we're really confined to those allegations. And when we look at the First Amendment complaint, what we see definitively in paragraph 10 is an allegation that says the individual in question that committed the alleged assault was not providing any professional services care or treatment for Jane Doe. So for these exclusions, Mr. Hassebrock, are you focusing on the alleged negligence and breach of duty by the hospital, or are you focusing on the acts of the employee? Oh, I think, Your Honor, that the case law tells us we have to focus on the act. And there has to be a connection as to that. The act of whom? The act of the individual, the assault. And that's, you know, the Valero case actually tells us that, and that's a case that Evanston relies on. That's the case where there was a sexual abuse exclusion, a molestation exclusion. And the policyholder took the position that the negligence claim should be covered, and the court said, no, we don't look at the duty, we look at the act. And I think the court indicated that in questions to counsel, and I think that's exactly right. The string of cases discuss that. Certainly the Lindheimer case discussed at length in the district court's opinion talks about focusing on the act itself. And so when you look at that allegation in the complaint, you see definitively there is no connection between the sexual abuse alleged and professional services provided, because there are no services in the context there can't be. And again, case law is clear. Why does there have to be a causal connection under the bodily injury exclusion? Because that's worded in a way that seems to me to be unclear. It's unclear whether or not the person, excuse me, patient, person, or resident just has to be receiving service of professional nature generally unrelated to the act causing bodily injury, or whether the act causing bodily injury to come within the exclusion has to be a professional service rendered. I'm not sure that there's a clear answer to that question. Well, I think there is. I think you touched on it a moment ago in questioning that there's a redundancy here. So there's no reason to say, if you look at the specific language of the bodily injury exclusion, there's no reason to say a patient that is receiving services of a professional nature. And Evanston is wrong in saying that the district court added the word while. If you look at the quote on page 30 of the order, the court correctly cited and quoted this exclusion not using the word while. The reason it's discussed in that context is because that's what the exclusion means. That's how it's written. And the key phrase is receiving services. That's present tense. And it tells us it must be happening at the time of the injury. But that just tells you that the person has to be getting those services at the time of the injury, but doesn't tell you whether there's a causal connection or not. Well, you need the causal connection, Your Honor, because you get absurd results if you don't have that. Give me one example of an absurd result. We all know that there are general liability risks and professional liability risks. So, for example, the court mentioned amputation of the wrong limb. That's clearly professional liability, professional services. But what if you're a patient in the hospital and you're injured because the roof collapses? That's a general liability risk. That has nothing to do with professional services. And the Florida case law is clear on this distinction. That's why sexual abuse falls into the category of general liability, not professional liability, because it has nothing to do with professional services. So, if you have an example there, Your Honor, where the roof collapses, according to Evanston, claims by visitors in the hospital that are hurt by that would be covered, but not claims by patients. Because the only way they can succeed in this lawsuit is by proving that their exclusion absolutely limits coverage for any injury to any patient whatsoever under the GL policy. And that's simply not the way it's written. You and I could stand here right now and write that exclusion in one sentence. You would simply say, the policy excludes all coverage for any injury to a patient or resident of the facility. But that's not what they said, of course. They said, receiving services of a professional nature. And that's a redundant clause unless you give it effect. It has to mean that there are services currently being provided and that cause the injury. Another example, they say there's no temporal limitation here. But there is. Receiving is present tense, so it is a temporal limitation. But the exclusion also doesn't say who must be providing the professional services. So imagine a situation where a visitor is sitting in the waiting room on the phone with their accountant giving professional advice about their finances. And the roof collapses and they're injured. Evanston, reading this as broadly as they do, could now say, we don't need a causal connection with the injury and the services provided. So that person, a visitor, is a person at the facility who's receiving professional services from their accountant on the phone. And so now we would like to exclude that risk as well. It's patently absurd to believe that the exclusion would apply that broadly, Your Honor, because no hospital would purchase a policy that said we will offer you no GL coverage for your patients. But that's exactly how they're trying to interpret this. It's just not how they wrote it. And Westchester was certainly entitled to a clear understanding of what was being excluded. So at minimum, I would say, you know, I agree with Your Honor, certainly there's a 50-page district court opinion that is soundly reasoned and had this reading of the policy. At best, it is unclear. At best, there would be multiple reasonable ways to read this policy. And in that case, you've got an ambiguity. And an ambiguity would be resolved in favor of the insured, at which point certainly the district court did not find it to be ambiguous, but it would be harmless error because it would be the same result. So with respect to the bodily injury exclusion, Your Honor, that is, I believe, what I wanted to cover with respect to that language. And to turn to the case law, you know, there really is no case, certainly I agree with the court and counsel that there's no case interpreting this specific language because it's unique and in my view, poorly worded. It certainly is not worded in a way that I believe supports Evanston's argument as far as how broad they would like to apply the exclusion to literally any injury to any patient in the hospital. So there's really no case law on that subject and the court discusses at length the Lindheimer case, which I think is the Florida case that is controlling and tells us. So we look at the act, we need a causal connection and we simply don't have one here. Turning to the professional services exclusion briefly, I think this is even clearer because the case law is clearer. Cases have dealt with these professional liability exclusions and the law there is very straightforward. Again, we do look at the act and in this case, because we're talking about the duty to defend, we do look at the allegations of the complaint and there is absolutely 100% no connection between the injury and any professional service that's being provided. As a result, you've got actually somewhat specific language. I mean, Evanston argues for a very broad interpretation again of the professional services exclusion, but it requires an act, error or omission in the performance of professional services. It is not simply just being a patient at this facility and that can't be the law and it's not the law according to Lindheimer and other decisions. I believe several cases are cited on and it's discussed at 25 to 29 of the district court's order. So it doesn't matter how broadly you try to read this exclusion. The Florida clerks are clear that professional services end where the sexual assault begins and here we have a situation where the assault had nothing to do with services being provided and that's specifically alleged in the complaint. The only other case I guess I should address there is the Florida Atlantic orthopedic case. That was the case that dealt with professional services in the context of a medical crisis. It was actually medical services being provided. A patient died as a result of surgery and the allegations were related to the facility's inability to respond to that emergency and extract the patient to another location. So that case discussed some allegations related to negligent hiring and the like. That really wasn't argued. Evanston really didn't make that argument on summary judgment. The district court notes that this really wasn't fleshed out. Evanston really didn't make their case there, but that is the only case law they now offer and that case is rather clearly applicable to medical services being provided in the context of an operation that's literally being performed, not in our context where we're talking about an alleged sexual abuse that's completely divorced from any professional services being provided. The only other comment I was going to offer was on the issue of the endorsement language and the professional services definition. I don't believe the court exclusively relied on that definition because it discusses case law that address the common law interpretation and other policies where professional services was not defined. So I don't believe that was the sole basis of the court's opinion, but certainly the court was entitled to look at how the policy has defined professional services to get an understanding of how that language should be interpreted in the context of this case. Even though the language is not word for word? Well, correct, Your Honor. And Evanston tries to make an argument at this point that that endorsement language should not apply to the general liability policy and that's not clear from the record before this court at all. It's more likely, in our view, that that's merely a typographical error in the endorsement and that actually does apply. But irrespective of that, the court certainly was entitled to look at that and understand how professional services have been defined in some context in the policy to then read the policy as a whole and apply it. And, as I said, the court goes beyond that when it's looking at case law that speaks to definition of professional services... Well, professional services as undefined within a policy and as interpreted by the common law. An everyday interpretation of that phrase as it appears undefined in an insurance policy. With that, does the court have any additional questions I can answer? I don't think so. Thank you very much, Mr. Hasselbrock. Thank you for your time. Okay, Mr. Kaplan, you can close up our day. Thank you, Your Honor. We know, as we stand here now, that there are several errors in the magistrate's opinion that was summarily affirmed at the district court. What Mr. Hasselbrock just referenced with regard to the definition and the amendatory endorsement, on its face, it does not apply to claims made coverage on the jail side. That's the only jail coverage the hospital bought. The magistrate simply applied the wrong definition. Isn't that a harmless error? No matter how you slice and dice professional services, you end up in the same position. It's got to be some expertise applied by someone in providing some sort of benefit, product, service, or the like, right? So let's look at that under a microscope. With respect to the professional services exclusion, I agree. The policy requires that, in order for the exclusion to apply, the claim must be based on, arise under, or in some way involve the provision of services of a professional nature. So that's not a defined term. Let's take the common law meaning. We're going to get to the same place. So to that point, we rely on Maryland casualty. We rely on Colony Against Suncoast. We rely on Driggers and the affirmance of Maryland casualty. There are a line of cases that recognize that services, policies, and procedures are an intricate part of the services, and all that's required here is that it in some way involve. We're so far beyond that. The complaint and the tort action focuses on those policies exclusively. That's the only thing for which the hospital's been sued. On the bodily injury side, the magistrate stated on page 31 of the opinion that Evanston's argument fails because there's no evidence Jane Doe suffered a bodily injury while receiving any professional services. That's not what the exclusion says. It just isn't. And by changing the language to achieve an outcome, the magistrate stepped out of bounds. Florida law prohibits that. That's what the exclusion requires. We've established its application. I know these are hard facts, but we need to stay true to our task. Thank you for your time. All right, thank you both very much. We are in recess for today.